UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

DETRICK OLIVER                                                                                    PLAINTIFF

VS.                                                              CIVIL ACTION NO. 3:12cv683-DPJ-FKB

HOLMES COUNTY; HOLMES COUNTY
SHERIFF DEPARTMENT; SHERIFF
WILLIE MARCH (individually and in his
official capacity); DEPUTY SHERIFF
KENNY WILSON (individually and in his
official capacity); AND JOHN DOES 1–5                                            DEFENDANTS

ORDER

This § 1983 case is before the Court on the Motion for Summary Judgment Premised on Immunity [9] and the Motion to Strike Affidavits [32] filed by Defendants Sheriff Willie March and Deputy Sheriff Kenny Wilson, in their individual capacities.  By agreed Order [8], the parties conducted immunity-related discovery and Plaintiff later filed a response [30] in opposition to the summary-judgment motion.  The Court, having considered the parties' submissions and the applicable law, finds that Defendants' Motion to Strike Affidavits [32] should be granted in part and denied in part.  Additionally, Defendants' Motion for Summary Judgment Premised on Immunity [9] should be granted in part but denied as to Oliver's claims of false arrest and excessive force.

I.       Facts and Procedural History

On the night of August 5, 2011, Deputy Sheriff Kenny Wilson and Sergeant Mickey Chisolm arrived at the Kangaroo gas station in Lexington, Mississippi, where a recent shooting occurred.  The officers frequented the location as part of their regular patrol to discourage criminal mischief.  Sometime after midnight, Plaintiff Detrick Oliver drove himself and his two

friends to the gas station to purchase refreshments.  After Oliver was in the parking lot for approximately 20 minutes, Wilson told Oliver that he and his friends needed to leave.  At this point the parties' accounts diverge leaving disputed questions of fact.

Because the facts must be viewed in a light most favorable to Oliver, the following facts are based on his account.  According to him, bad blood existed between himself and Wilson.[1]  Oliver claims that he was not drinking or using illegal drugs that night but that Wilson nevertheless told him to leave. Oliver attempted to comply, but his car would not crank, so Oliver approached Wilson and told him that Oliver and his friends would need to push-start the car once the third passenger finished his purchases inside the gas station.  Oliver Dep. at 39.

This plan did not impress Wilson, who accused Oliver of drinking and told him to move the car immediately.  *Id*. at 40–41.  The two exchanged further words on these points, and Oliver added that an 18-wheeler now blocked his exit.  *Id*. at 41.  Around this time, Wilson allegedly told Oliver not to say another word, but the conversation continued regarding Oliver's inability to start and move his vehicle.  And as Oliver tried to further explain, Wilson told him: "I'm taking your 'A[ss]' in." *Id*. at 42.  At this point Oliver turned around and began returning to his car, Wilson followed, and, according to Oliver, sprayed him with Mace without further warning.  *Id*. at 42.[2]

---

[1] Due to the salacious nature of Oliver's account of their feud, the Court declines to restate the testimony found on line 4 of page 35 of Oliver's deposition.  Oliver Dep. at 35.

[2] Oliver states in his affidavit that Wilson sprayed him with pepper spray, but elsewhere claims it was Mace.  *Compare* Oliver Aff. [31-1] ¶ 5, *with* Oliver Dep. at 42; *see also* Compl. [1-1] ¶ 22 (referring to Mace).  Wilson also refers to it as pepper spray.  Wilson Aff. [9-3] ¶ 10.  In light of Oliver's testimony, and in part for the sake of consistency, the Court will also refer to it as Mace in this Order.

Around this time in the encounter, the parties came within view of a video surveillance camera. The images are grainy and difficult to see, but they show Oliver briskly walking away from the two officers. Defs.' Mot. [9] Ex. 1 to Ex. C, Video Footage. A few steps later, Oliver begins moving more quickly and is clearly trying to evade the officers in a way similar to a sports fan attempting to avoid being removed from the field by security.[3] Oliver never runs from the scene, and according to him, he was trying to avoid the Mace. Oliver Dep. at 42. Chisolm told him to stop resisting, and Oliver said he would stop when Wilson stopped spraying Mace. *Id*. at 74.

Officer Chisolm was eventually able to stop Oliver and place handcuffs over his left wrist. *Id*. at 106. Oliver claims that he pulled his right wrist away when Chisolm twisted it, but that he then gave up and offered his right wrist to Chisolm to cuff at about the same time that Wilson hit Oliver in the back of the head with his baton. *Id*. at 43–44, 106–07. Chisolm apparently finished cuffing Oliver, and the testimony can be read to suggest that Wilson continued to hit Oliver with the night stick on his neck and legs after Oliver capitulated and/or was restrained. *Id.*

Once they had cuffed him, the officers led Oliver to their patrol car and Wilson allegedly sprayed Mace into the back seat and ordered Oliver to "get [his] 'A[ss]' in the car." *Id.* at 109. Oliver protested, and Wilson cleaned up the Mace before securing Oliver inside. Oliver, who was bleeding, was taken to a nearby hospital where he was treated and received eight staples to his head. He was then taken to the Holmes County Sheriff's Office, where he was booked and

---

[3]The Court is not making light of the situation, but is instead offering the best available description.

charged with disorderly conduct.  Oliver was released on his own recognizance shortly after his arrival; the disorderly-conduct charge was eventually dropped.

Oliver filed suit on July 27, 2012, in state court alleging constitutional violations under 42 U.S.C. § 1983 as well as numerous state-law tort claims.  The case was removed to federal court and the parties agreed to a briefing and discovery schedule on Defendants March and Wilson's forthcoming qualified-immunity motion.  Order [8] Feb. 6, 2013.  March and Wilson thereafter filed, in their individual capacities, their Motion for Summary Judgment Premised on Immunity [9].  At the close of immunity-related discovery, Plaintiff responded [30] in opposition.  Defendants filed a rebuttal to their motion as well as a Motion to Strike Affidavits [32] concerning the affidavits of Oliver and Oliver's expert, John Tisdale.  Oliver has not responded to Defendants' motion to strike.  The Court has jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing

that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citations omitted).

Additionally, to the extent the video submitted by Defendants conflicts with Oliver's recollection of the events, the Court considers "the facts in the light depicted by the videotape." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)).  But the Court will continue to view the facts in the light most favorable to Oliver where "the video does not so blatantly contradict the version of events told by [Oliver] that no reasonable jury could believe his version." *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013).

III.    Preliminary Matters

    A.    Motion to Strike

Defendants moved to strike aspects of Oliver's affidavit as well as the affidavit of Oliver's expert, John Tisdale.  In paragraph four of his affidavit, Oliver states:  "I did not place [] Wilson or any other person fear [sic] of bodily harm."  Oliver Aff. [31-1] ¶ 4.  This statement is conclusory and speculative as to others' perceptions, and the Court finds it should be struck.

Defendant also seeks to strike paragraph eight of Oliver's affidavit—which asserts that Oliver did not fight back or actively resist arrest—because it is contrary to the video evidence. Oliver Aff. [31-1] ¶ 8. But the video does not "blatantly contradict" Oliver's statement that he did not fight back. *Ramirez*, 716 F.3d at 374. That portion will not be struck. As for resisting, the video does show Oliver resisting when he began moving erratically to avoid the officers, so Defendants' motion is granted to that limited extent. But the video is otherwise of such poor quality that one cannot discern much else. Except where the video suggests otherwise, the Court will view the facts in the light most favorable to Oliver and this aspect of Defendants' motion is denied. As to Tisdale's affidavit, paragraphs three through five assert nothing more than legal conclusions based on the expert's review of the record evidence. Tisdale Aff. [31-6] ¶¶ 3–5. That consideration is a matter for the Court, and those aspects of the affidavit are therefore struck. *Brown v. Gulfport Police Dep't*, No. 1:10CV405 LG-RHW, 2012 WL 1898913, at *5 (S.D. Miss. May 23, 2012) (striking similar affidavit).

   B.  Request for Additional Discovery

  In the body of his Response, Oliver has requested additional discovery under Federal Rule of Civil Procedure 56(d). This request is insufficient for multiple reasons. First, the request fails to comply with Uniform Local Civil Rule 7(b)(3)(C), which requires that a motion for relief be docketed separately from a response. Second, the accompanying affidavit submitted by Plaintiff's counsel is conclusory and fails to specify what additional discovery is required or why the previously-afforded discovery period was inadequate. *See Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) ("[N]on-moving parties requesting Rule 56(d) relief 'may not simply rely on vague assertions that additional discovery will produce

needed, but unspecified, facts.'" (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010))). Oliver's request for additional discovery is therefore denied.

IV.  Analysis

    A.  Conceded Claims

In his Response, Oliver has conceded all state-law claims against March and Wilson, his federal claims against March, and his failure-to-intervene claim against Wilson.[4] Pl.'s Mem. [31] at 14. Additionally, Oliver has abandoned his takings claim against Wilson by failing to respond to Wilson's arguments for its dismissal or pursue it beyond the Complaint. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment."). That leaves Wilson's request for qualified immunity on the unlawful-arrest and excessive-force claims under § 1983.

    B.  Qualified Immunity

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (citations omitted). When a defendant raises qualified immunity, the burden is on the plaintiff to "demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

To determine if an individual is entitled to qualified immunity, the court applies a two-step analysis. "First, [the court] ask[s] whether, considered in the light most favorable to the plaintiff, the plaintiff has alleged facts that, if proven, would establish that the official violated

---

[4]Oliver has conceded only the individual-capacity aspects of these claims.

the plaintiff's constitutional rights." *Senu-Oke v. Jackson State Univ.*, 283 F. App'x 236, 238 (5th Cir. 2008) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If the defendant's conduct did not violate [the] plaintiff's constitutional rights under the first prong, . . . he is entitled to qualified immunity." *Blackwell v. Laque*, No. 07-30184, 2008 WL 1848119, at *2 (5th Cir. Apr. 24, 2008). The second prong requires the court to consider

> whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions.

*Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007) (citations omitted). "It is important to emphasize that this inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Katz*, 533 U.S. at 201). Thus, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 199 (citation and quotations omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (citation and quotations omitted). District courts are free to address the second prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

    1.  Unlawful Arrest

An officer sued for unlawful arrest "is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which [he] was aware, there was a fair probability that [the arrestee] had committed or was committing an offense." *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 656 (5th

Cir. 2004) (citations omitted). "'Even law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to immunity.'" *Id.* (emphasis in original) (citation omitted) (quoting *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000)); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (recognizing that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable"). "In sum, [Oliver] 'must clear a significant hurdle to defeat [Wilson's] qualified immunity.'" *Haggerty*, 391 F.3d at 656 (quoting *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001)). "[T]here must not even arguably be probable cause for the . . . arrest for immunity to be lost." *Brown*, 243 F.3d at 190 (citations and quotations omitted). These inquiries are fact specific, calling for a detailed examination of the record evidence.

Wilson contends that he arrested Oliver for disorderly conduct because Oliver ignored the request to leave the parking lot, began swinging erratically at the officers, and refused to calm down. Wilson Aff. [9-3] at 2–3. He cites Mississippi Code Section 97-35-7, which provides in part:

> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to:
> . . .
> > (i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct . . . .

The disorderly conduct charge was eventually dropped for procedural reasons.

It is undisputed that Wilson instructed Oliver to leave the gas station and that after initially attempting to leave Oliver returned to speak with Wilson. At this point, however, the stories diverge leaving the Court to view the summary-judgment evidence in the light most favorable to Oliver. And according to Oliver, he approached Wilson and merely stated that he was unable to leave immediately because his car would not start and an 18-wheeler blocked his exit. Oliver Dep. at 38–42; Oliver Aff. [31-1] ¶ 3. Supposedly, Wilson then told him not to say anything else, but the two continued their conversation about the car and Wilson finally said, "I told you not to say nothing. I'm taking your 'A[ss]' in." Oliver Dep. at 42. Oliver nevertheless walked toward his car, was Maced, tried to evade the Mace, and was then cuffed by Chisolm and beaten by Wilson before being removed to the patrol car.

Viewed in the light most favorable to Oliver, a question of fact exists as to the reason for the arrest, whether Oliver was attempting to comply with Wilson's orders to leave or ignored them as Wilson claims, and whether he presented any risk for breach of the peace. *See Massey v. Wharton*, 477 F. App'x 256, 260–61 (5th Cir. 2012) (rejecting qualified immunity on resisting-arrest and disorderly-conduct charges where plaintiff attempted to comply at all times). Given those questions, qualified immunity must be denied.

Additionally, Wilson is not entitled to qualified immunity based on Oliver's resistance as depicted in the video. Not only did Wilson fail to charge Oliver with resisting arrest, but "[t]he offense of resisting arrest presupposes a *lawful* arrest." *Taylor v. State*, 396 So. 2d 39, 42 (Miss. 1981) (emphasis added). Concomitant with this, a "person has a right to use reasonable force to resist an unlawful arrest." *Id.* (citing *Pettis v. State*, 48 So. 2d 355 (Miss. 1950)). Given these

factual disputes, the Court finds that Wilson's request for qualified immunity should be denied without prejudice.[5]

        2.      Excessive Force

Oliver claims Wilson used excessive force when he sprayed Oliver with Mace and struck Oliver with his police baton in the head and leg. Wilson does not dispute for purposes of his motion that spraying Oliver with Mace and striking him with the baton caused injuries. Instead, Wilson asserts that his use of force was neither clearly excessive nor objectively unreasonable.

To establish a claim for use of excessive force under the Fourth Amendment, Oliver must prove he "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Hous.*, 161 F.3d 834, 839 (5th Cir. 1998) (citing *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996)). Inquiry into the second and third elements is often intertwined. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012). Excessive force claims are necessarily fact-intensive; whether the force used is excessive or unreasonable depends on "the facts and circumstances of each particular case." *Graham v. Connor*, 490 U.S. 386, 396 (1989); *see also Brosseau*, 543 U.S. at 201 (observing that this "area is one in which the result depends very much on the facts of each case"). Important factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether

---

[5]The false-arrest claim presents the closer of the two questions, and because the case is otherwise going to trial, the Court alternatively exercises its discretion to take this issue to trial as well. *See Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) ("Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that 'the better course would be to proceed to a full trial.'" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citation omitted). The determination of "objective reasonableness" is a question of law. *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008) (citing *White v. Balderama*, 153 F.3d 237, 241 (5th Cir. 1998)). But disputes of material fact will prevent a court from determining the objective reasonableness of an officer's conduct, thereby precluding summary judgment. *Gutierrez v. City of San Antonio*, 139 F.3d 441, 451–52 (5th Cir. 1998).

Wilson contends that he sprayed Oliver with Mace after Oliver failed to comply with Wilson's orders, ignored Wilson's threats of arrest, and acted in an erratic and threatening manner. Wilson Dep. at 39–40, 46–48; Wilson Aff. [9-3] ¶¶ 7–10. Additionally, Wilson claims that he struck Oliver with the baton because the Mace was ineffective and Oliver continued to struggle and swing at the officers. *Id.*

But this account is disputed, and the Court must view the evidence in the light most favorable to Oliver. *Poole*, 691 F.3d at 629. According to Oliver, he was merely explaining his situation to Wilson when Wilson threatened arrest for speaking and then Maced him without warning after Oliver began walking back to his vehicle. Oliver Dep. at 75–76 ("The officer didn't tell me to stop walking away before he pepper sprayed me. He pepper sprayed me first and then he told me to stop resisting arrest.").[6]

After Wilson Maced him, Oliver tried to evade the officers and resisted arrest for approximately 20 seconds. Oliver Dep. at 90; Defs.' Mot. [9] Ex. 1 to Ex. C, Video Footage at 59:19–59:40. The video does not appear to show Oliver swinging at the officers, and Chisolm

---

[6]The video is unhelpful to this aspect of the story because the initial confrontation supposedly occurs outside the frame and there is no audio. *See* Defs.' Mot. [9] Ex. 1 to Ex. C, Video Footage; Oliver Dep. at 97.

was able to detain Oliver and cuff his left wrist.  Oliver then pulled his right wrist away when it was twisted, but he claims that he quickly gave up and offered Chisolm his right wrist to be cuffed.  Oliver Dep. at 44 (stating that he told the officer, "Go ahead, Man, and put your other cuff on me"), 106 (stating that he "was holding that arm around for him to handcuff me").  Oliver contends that at that same time he gave up and/or was finally cuffed, Wilson began a series of blows starting with Oliver's head and continuing with his leg.  *Id*. at 106–07.  The strike to the head was severe enough to require eight staples.  *Id.* at 25.

Looking to the *Graham* factors, Wilson believed Oliver had committed a relatively minor offense—disorderly conduct.  See *Massey*, 477 F. App'x at 263 (indicating disorderly conduct is a minor offense).  As for the threat Oliver posed, Oliver's account and the video do not indicate an immediate threat to the officers or others.  See *Ramirez v. Martinez*, 716 F.3d 369, 378 (5th Cir. 2013) (reversing summary judgment based on qualified immunity and holding that "[p]ulling his arm out of [officer's] grasp, without more, is insufficient to find an immediate threat to the safety of the officers").  Finally, as for whether he resisted or attempted to flee, the video does not suggest that Oliver attempted to flee the scene.  He did, however, attempt to evade the officers and the Mace, and he also walked away after Wilson told him:  "I'm taking your 'A[ss]' in," all of which lasted about 20 seconds.  Oliver Dep. at 42.

Under these disputed facts, questions persist whether Wilson's use of Mace was premature and whether his repeated baton strikes to Oliver's head and leg—some after Oliver capitulated and/or was restrained—were disproportionate to the nature of the crime and amount of resistance.  See *Massey*, 477 F. App'x at 263 (citing *Autin v. Baytown*, 174 F. App'x 183, 186 (5th Cir. 2005)) (denying qualified immunity where officer pepper-sprayed and tasered plaintiff

who was not a threat and was not attempting to flee); *Staten v. Tatom*, 465 F. App'x 353, 359 (5th Cir. 2012) (finding qualified immunity inappropriate in light of, *inter alia*, dispute over how much plaintiff was resisting); *Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009) (noting severity of force relevant to inquiry into excessiveness).[7]

As noted throughout, the Court must view the evidence in a light most favorable to Oliver, the nonmovant. The Court recognizes that Wilson has offered a very different version, which a jury might find persuasive, but Oliver supports his position with competent evidence that must be credited where it does not blatantly contradict the video. And on that record, the Court finds that Wilson's motion for qualified immunity should be denied without prejudice.

V.      Conclusion

The Court has considered all of the parties' arguments. Those not addressed would not have changed the outcome. Defendants' Motion to Strike Affidavits [32] is granted in part and denied in part and Plaintiff's request for discovery is denied. Defendants' Motion for Summary Judgment Premised on Immunity [9] is denied with respect to the claim that Wilson unlawfully arrested Oliver and used excessive force when he sprayed Oliver with Mace and struck him with the baton. The motion is otherwise granted.

---

[7]If Oliver's testimony is believed, then other circumstantial evidence supports his contention that Wilson used excessive force. For example, Oliver offered a motive for Wilson's conduct based on an ongoing personal dispute. *See* Oliver Dep. at 35. He also claims Wilson Maced the police cruiser while Oliver was handcuffed and told him to "get [his] 'A[ss]' in the car." *Id*. at 109. While the latter event resulted in no apparent physical injury, such acts would clearly be excessive and reflect an intent to apply unnecessary force.

The parties are instructed to contact the magistrate judge within 10 days of entry of this Order to set the case for status conference. The magistrate judge may lift the stay if appropriate.

**SO ORDERED AND ADJUDGED** this the 7th day of August, 2013.

              s/ *Daniel P. Jordan III*
              UNITED STATES DISTRICT JUDGE